UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HEBEI HENGBO NEW MATERIALS TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No. 18-CV-00468-LHK <br><br> **ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 34, 45, 53 |

Plaintiff Hebei Hengbo New Materials Technology Co., Ltd. f/n/a Hengbo Fine Ceramics Materials Co., Ltd. ("Hengbo") filed this suit against Apple, Inc. ("Apple") and 10 Doe Defendants claiming that its contract with Apple to produce high purity alumina melt stock to make glass should be rescinded and that Apple breached the implied covenant of good faith and fair dealing. Before the Court is Plaintiff's Motion to Compel Arbitration and Defendants' Motion to Dismiss. Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES Plaintiff's Motion to Compel Arbitration. The Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss.

1

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Hengbo is a limited liability company organized under the laws of China. ECF No. 23 ("Compl.") ¶ 3. Hengbo manufactures, among other things, "high purity alumina melt stock," which is used "to make sapphire glass, a scratch resistant and durable form of glass used in consumer electronics." *Id.* Defendant Apple is a California corporation that develops and sells products such as the Apple iPhone. *Id.* ¶ 4. Hengbo alleges that the names and capacities of the Doe defendants have not yet been ascertained. *Id.* ¶ 5.

On January 23, 2014, Hengbo and Apple signed a Master Development and Supply Agreement ("MDSA") and a Statement of Work ("SOW") for Hengbo's production of high purity alumina melt stock for use in Apple's products. *See* Compl. ¶ 6 (citing Compl. Exhs. A & B). Hengbo argues that "[t]he terms of the *MDSA* are onerous and unfair to Hengbo, and result directly from Apple's superior bargaining power and abuse thereof." *Id.*

Hengbo pleads that the MDSA imposed obligations upon Hengbo, including:

- Apple [will] "periodically provide written forecasts indicating Apple's projected demand for each Good (each such forecast, a '*Forecast*'). Supplier [Hengbo] will accept each such Forecast upon receipt. Supplier [Hengbo] will timely commence the manufacture of Goods in order to deliver the Goods by the dates indicated in each Forecast.

- Hengbo [is obligated] to "accept and timely fulfill all Purchase Orders that Apple, or any Apple-authorized entity issues to procure Goods under this Agreement for use in Apple products (Apple and each of the foregoing entities, an '*Authorized Purchaser*') by the delivery date requested in such Purchase Order so long as the number of Goods indicated does not exceed the quantity specified in the applicable Forecast."

- "Regardless of initial manufacturing yields or any other circumstance, Supplier [Hengbo] will always timely start the manufacture of the Goods in order to fully and timely meet Apple's Forecasts."

*Id.* ¶¶ 7–9 (citing Compl. Exh. A ¶¶ 2, 4.1, 16).

By contrast, Hengbo pleads that "the MDSA did not obligate Apple to do anything." *Id.* ¶ 10. The MDSA stated: "Authorized purchasers may, without charge, (i) cancel any Purchase

United States District Court
Northern District of California

Order, or any portion thereof; or (ii) reschedule the shipment dates of undelivered Goods and/or redirect shipments of Goods to alternate locations. *Id.* ¶ 10 (citing Compl. Exh. A ¶ 4.2). Hengbo asserts the MDSA "did not obligate Apple to purchase anything from Hengbo." *Id.* ¶ 11. The MDSA stated: "Authorized Purchasers are not obligated to purchase any Goods except pursuant to a Purchase Order it issues. Except for amounts due pursuant to a Purchase Order or SOW, Authorized Purchasers will not be responsible for any costs in connection with the supply or purchase of any Goods." *Id.* (citing Compl. Exh. A ¶ 4.5). "In other words," Hengbo asserts, "Hengbo was obligated to produce thousands of metric tons of high purity alumina stock to meet Apple's forecasts, but Apple was not obligated to do anything in return." *Id.*

Beginning in the year 2014 until November 3, 2014, "Apple's forecasts required Hengbo to produce hundreds of metric tons" of high grade alumina stock each month (from June 1, 2014, the forecasts required 454 tons per month). *Id.* ¶ 13. Because of these forecasts, Hengbo produced thousands of metric tons of high purity alumina stock that ultimately amounted to approximately 2,000 metric tons. *Id.* ¶¶ 15, 16. To make this level of production possible, Hengbo enlarged its production capacity by building a new factory and hiring additional workers. *Id.* ¶ 15. Apple purchased none of the alumina stock. *Id.* ¶ 14. Instead, Apple changed its forecast on November 3, 2014 when it "abruptly reduced its forecasts from 454 metric tons per month to zero." *Id.* ¶ 17. The result for Hengbo is that approximately 2,000 metric tons of alumina stock remain unused and unbought by Apple or "any entity acting on its behalf" in a warehouse in China, a situation Hengbo pleads resulted in $25,000,000 in damages. *Id.* ¶¶ 16, 18.

Consequently, Hengbo's Complaint asserts two claims for relief. First Hengbo seeks enforcement of rescission of contract pursuant to California Civil Code § 1689(b)(2)-(4). *Id.* ¶¶ 19–22. Second, Hengbo alternatively claims a breach of contract and the implied covenant of good faith and fair dealing. *Id.* ¶¶ 23–28.

**B. Procedural History**

Hengbo filed this case on January 22, 2018, more than three-and-a-half years after the

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

issues that gave rise to the Complaint. *See* ECF No. 1. The original version of the Complaint contained certain redactions, so it was accompanied by a Motion to file Under Seal. *See* ECF No. 4. After Magistrate Judge Cousins denied the Motion to File Documents Under Seal, *see* ECF No. 19, Hengbo refiled its original Complaint without any redactions. ECF No. 23. Apple was served on January 23, 2018. *See* ECF No. 11.

On April 2, 2018, the Court granted the parties' stipulation to extend Apple's deadline to answer or otherwise respond to the Complaint to April 20, 2018. ECF No. 28.

On April 20, 2018, Apple filed its Motion to Dismiss Plaintiff's Complaint. ECF No. 34 ("MTD"). On April 24, 2018, the parties filed a Joint Case Management Statement ("JCMS"). ECF No. 37. In the JCMS, the parties discussed their respective stance on the facts, the legal issues, the scope of discovery, and the filing of motions. *See id.* In particular, the JCMS stated that "[t]he parties are additionally contemplating, but have not yet decided, whether to move to compel arbitration," and that "Plaintiff reserves its right to move to compel contractual arbitration at a later date." *Id.* at 4, 6.

At the case management conference ("CMC") on May 2, 2018—101 days after Hengbo filed its Complaint—counsel for Hengbo again represented that it had not yet decided whether to seek arbitration and that "it's just a matter of the client making up their mind." *See* ECF No. 43 at 3–4. After the CMC, the Court issued its Case Management Order and gave Hengbo until May 11, 2018 to file a statement regarding whether it intends to move to compel arbitration, and June 1, 2018 to file any motion to compel arbitration. ECF No. 42.

On May 11, 2018, Hengbo filed its Notice of Intent to File a Motion to Compel Arbitration. ECF No. 44. On June 1, 2018, 43 days after Apple filed its Motion to Dismiss and 131 days after Hengo initiated the lawsuit, Plaintiff Hengbo filed a Motion to Compel Arbitration. ECF No. 45 ("MTC"). On June 4, 2018, Hengbo filed an Opposition to Apple's Motion to Dismiss. ECF No. 47 ("MTD Opp'n"). On June 15, 2018, Apple filed an Opposition to Hengbo's Motion to Compel Arbitration. ECF No. 48 ("MTC Opp'n"). On June 19, 2018, Apple filed its

4

Reply to the Motion to Dismiss. ECF No. 50 ("MTD Reply"). On June 22, 2018, Hengbo filed its

Reply to the Motion to Compel Arbitration. ECF No. 52 ("MTC Reply").

On June 22, 2018, Hengbo filed an Administrative Motion to Advance the Hearing Date so

that this Court would hear Plaintiff's June 1, 2018 Motion to Compel before or at the same time as

Apple's March 20, 2018 Motion to Dismiss. ECF No. 53. Apple opposed on June 26, 2018. ECF

No. 54. Because the Court rules on the Motion to Dismiss and the Motion to Compel Arbitration

simultaneously, the Court DENIES AS MOOT Plaintiff's administrative motion. *See* ECF No. 53;

*see also* Fed. R. Civ. P. 78(b).

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract

affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9

U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial

of an action 'upon any issue referable to arbitration under an agreement in writing for such

arbitration.'" *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 3). If

all claims in litigation are subject to a valid arbitration agreement, the court may dismiss or stay

the case. *See Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal.

Apr. 6, 2011).

The FAA states that written arbitration agreements "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. In deciding whether a dispute is arbitrable, a court must answer two

questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that

agreement to arbitrate encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic

Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two

factors, the court must compel arbitration. *Id.*; 9 U.S.C. § 4. "The standard for demonstrating

arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). In cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989) ("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration."). However, "state law is not entirely displaced from federal arbitration analysis." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Parties may also contract to arbitrate according to state rules, so long as those rules do not offend the federal policy favoring arbitration. *Volt*, 489 U.S. at 476, 478–79 (looking to whether state rules "offend[ed] the rule of liberal construction" in favor of arbitration). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues

of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If a contract contains an arbitration agreement, there is a "presumption of arbitrability," *AT & T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**B.  Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**C.  Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether

United States District Court
Northern District of California

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

As an initial matter, the parties dispute in what order the Court must decide the Motion to Compel Arbitration and the Motion to Dismiss. Plaintiff Hengbo says the Court is compelled to address the Motion to Compel first. See MTC 6–8. In response, Defendant Apple asserts it will be prejudiced if the Court decides Plaintiff's later filed Motion to Compel before Apple's earlier filed Motion to Dismiss. MTC Opp'n at 2. However, neither party cites to a Ninth Circuit case that compels the Court to decide a defendant's motion to dismiss and a plaintiff's motion to compel in any particular order, nor does the Court's own review reveal any case law mandating specific action by the Court. Therefore, having surveyed the case law, the Court is not convinced that there is any mandated order in which the court must decide these motions. However, because the Court finds it to be in the interest of efficiency to consider the motions simultaneously, the Court does so, turning first to the Motion to Compel Arbitration. A favorable ruling for Plaintiff on the Motion to Compel Arbitration would eliminate any need to consider the Motion to Dismiss.

Before addressing the Motion to Compel Arbitration, the Court must briefly address the Motion to Dismiss. Hengbo's Complaint asserts two claims for relief: rescission and breach of the

United States District Court
Northern District of California

covenant of good faith and fair dealing. Compl. ¶¶ 19–22, 23–28. Apple moves to dismiss both claims. *See* MTD at 1. In its briefing, Hengbo concedes that it "agrees with Apple that there is sufficient consideration for the MDSA," and therefore Hengbo "withdraw[s] its claim for rescission of the MDSA for failure of consideration." MTC at 11; MTD Opp'n at 1 n.1, 7. The Court agrees with the parties that the contract was supported with adequate consideration because the Agreement required Apple to pay Hengbo up to $8 million for certain equipment. *See* Compl. Exh. B ¶ 5. Accordingly, Hengbo's claim for rescission must fail. *See Unidad de Fe y Amor Corp. v. Iglesia JesuCristo es Mi Refugio, Inc.*, No. C 08-4910 RS, 2009 WL 1813998, at *4 (N.D. Cal. June 25, 2009) ("[T]he claim for rescission . . . contemplates the formation of a contract in the first instance."). Therefore, the Court DISMISSES Hengbo's claim for rescission with prejudice. The remainder of this order focuses on the breach of the implied covenant of good faith and fair dealing claim.

### A. Motion to Compel Arbitration

This case presents the unique situation where Plaintiff Hengbo, after filing a complaint in federal court that claimed that there was no valid contract and thus no valid arbitration clause, abandoned that claim, then moved to compel arbitration. Hengbo argues that its claim for breach of the implied covenant of good faith and fair dealing should be sent to arbitration because (1) the MDSA contains a valid and enforceable arbitration clause, and (2) Hengbo's claim against Apple falls within the scope of the arbitration clause. MTC at 10–13. Apple responds that Hengbo has waived its right to compel arbitration. *See* MTC Opp'n at 9–24. The Court therefore turns to the threshold question of waiver.

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (citing *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)). In the Ninth Circuit, arbitration rights are subject to waiver if three conditions are met: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such

9

inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (the

"*Fisher*" test). The Ninth Circuit has also expressed the test as:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008 (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).

"The party arguing waiver of arbitration bears a heavy burden of proof." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990). "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute waiver." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 934 (9th Cir. 2011) (citing *St. Agnes Med. Ctr.*, 31 Cal. 4th at 1195). "[W]aiver is an equitable doctrine. As such, courts can apply it to redress injustice in situations where technical requirements prevent the court from otherwise providing adequate legal remedies." *Cox*, 533 F.3d at 1125. However, any "determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" *Martin*, 829 F.3d at 1124 (quoting *Fisher*, 791 F.2d at 694).[1] Further, the Ninth Circuit in *Martin* has stated:

> A party that signs a binding arbitration agreement . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both. A party may not delay seeking arbitration until after the district court rules against it

---

[1] The parties dispute whether this case concerns international arbitration such that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") as well as a higher presumption in favor of arbitrability applies. *See* MTC Opp'n at 23–24; MTC Reply at 3–4. However, both parties appear to agree that federal law applies to the issue of waiver, *see* MTC Opp'n at 3 n.2; MTC Reply at 4, and both parties address the *Fisher* test in their waiver analysis, so the Court need not address this supposed disagreement. Moreover, even with a higher presumption of arbitrability, the Court finds that Hengbo, through its own actions, has waived its right to arbitration.

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

in whole or in part; *nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum.* Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party.

*Id.* at 1128 (emphasis added).

Turning to the waiver inquiry, Hengbo concedes that "[t]he first element is not in dispute, as Hengbo knew of its right to compel arbitration." MTC at 14. Accordingly, the Court considers the second and third elements.

As to the second element, whether Hengbo acted inconsistently with the right to compel arbitration, Apple argues that Hengbo has engaged in numerous acts inconsistent with arbitration, including:

> (1) filing the Complaint seeking relief in federal court; (2) demanding a jury trial; (3) submitting a Joint Case Management Statement reiterating its demand for a jury trial and asserting that arbitration was not appropriate at that time; (4) basing its primary claim for relief in the Complaint on the assertion that no valid contract was ever formed between the parties (and, thus, according to Hengbo, no valid arbitration provision); and (5) delaying filing this Motion [to Compel], including taking no action to compel arbitration or signal that it intended to pursue arbitration until well after Apple filed its Motion to Dismiss.

MTC Opp'n at 10–11. Hengbo responds that none of those actions are inconsistent with the right to compel arbitration. *See* MTC Reply at 4–9.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.2d at 1125. But the Ninth Circuit has said that "this [second] element [is] satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id.*

The Court concludes Hengbo acted inconsistently with its right to arbitrate. First, Hengbo, knowing of the arbitration clause, initiated this case in federal court seeking rescission of the contract and thus rescission of the arbitration clause. *See* Compl. ¶ 21. Importantly, Hengbo based one of its two claims on the argument that the whole contract, including the arbitration clause, was invalid for lack of consideration. Hengbo now abandons that claim so that Hengbo can argue that there was a valid arbitration clause permitting Hengbo to pursue arbitration. These actions are

11

inherently inconsistent. *See Martin*, 829 F.3d at 1128 ("A party that signs a binding arbitration agreement . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both.").

Hengbo's citations to *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967), and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006), do not justify Hengbo's inconsistent acts. *See* MTC at 12. In *Prima Paint Corp.*, the United States Supreme Court held that in reviewing an application for stay while the parties arbitrate, the federal court may "consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404. The Supreme Court stated that in that case, no claim was advanced that suggested the arbitration clause itself was defective. Therefore, the Supreme Court permitted the stay so that arbitration of the rescission claim could go forward to arbitration. *Id.* at 406. In *Buckeye Check Cashing*, the Supreme Court stated: "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445–46. Neither case is a waiver case. Moreover, neither case is helpful to Hengbo because Hengbo claimed in federal court that the *entire* contract, including the arbitration clause, must be rescinded. Moreover, Hengbo only abandoned its rescission claim in its Motion to Compel Arbitration and its Opposition to the Motion to Dismiss, in recognition of the claim's lack of merit and to bolster its new position in favor of arbitration.

Second, Hengbo itself filed the instant action seeking a jury trial and damages, an act that the Ninth Circuit has said to be inherently inconsistent with the right to arbitrate in *United Computer Sys., Inc. v. AT & T Corp. ("UCS")*, 298 F.3d 756, 765 (9th Cir. 2002). There, the Ninth Circuit found that plaintiff United Computer Systems had acted inconsistently with its right to arbitrate after plaintiff brought a civil suit against defendant AT & T, requested a jury trial and damages, and then *itself* moved to compel arbitration. *See id.* Other courts have similarly weighed

12

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

United States District Court
Northern District of California

the filing of a lawsuit as a factor demonstrating action inconsistent with the right to arbitrate. *See Morgan Stanley & Co. LLC v. Couch*, 134 F. Supp. 3d 1215, 1230 (E.D. Cal. 2015), *aff'd* 659 F. App'x 402 (9th Cir. 2016) ("[F]iling the FAC [(first amended complaint)]—with two non-statutory tort claims—was [plaintiff's] first act inconsistent with his right to arbitrate non-statutory claims under the Arbitration Clause."); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304 SBA, 2007 WL 1288349, at *4 (N.D. Cal. May 1, 2007) ("While filing a complaint itself does not waive the right to pursue arbitration, intentionally electing a judicial forum rather than an arbitral forum is a factor that may be weighed."); *see also Steiner v. Horizon Moving Sys., Inc.*, No. EDCV 08-682-VAP (CTx), 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008) ("The second requirement for waiver exists here, as Plaintiff has acted inconsistently with the existing right by filing a lawsuit in lieu of seeking arbitration of her claims.").

Further, Hengbo had knowledge of its right to arbitrate and was represented by experienced counsel—who is a Team Leader in arbitration at a sophisticated law firm—when Hengbo filed its Complaint in federal court instead of seeking arbitration. The Court is not persuaded by Hengbo's claim that it filed the Complaint in this Court "out of concern that it not be foreclosed from seeking relief due to the running of any applicable statutes of limitation," MTC at 16; *see also* MTC Reply at 5 n.3, because such an explanation does not explain *why* Plaintiff opted to initiate this action in federal court rather than as an arbitration, when doing the latter would have been just as effective in preserving its claims against a statutes of limitations defense.

Third, Hengbo participated in the litigation and delayed filing a motion to compel arbitration for over four months without reason. For instance, Hengbo participated in the JCMS and the CMC more than three months after its filing of the lawsuit—actions that are also inconsistent with the right to arbitrate. *See Couch*, 134 F. Supp. 3d 1215 (finding it relevant that approximately one month after plaintiff filed the complaint, the parties "submitted a joint scheduling report" and that "[i]n that 20-page report, the parties thoroughly outlined their respective positions and understandings of the facts and legal issues present in the case"). In both

United States District Court
Northern District of California

the JCMS and CMC, Hengbo indicated it had not yet made a decision on arbitration. In the JCMS, Hengbo stated "Plaintiff reserves its right to move to compel contractual arbitration at a later date," ECF No. 37 at 6, and at the CMC, counsel for Hengbo stated it still had not decided whether to pursue arbitration. *See* ECF No. 43. But as the Ninth Circuit has explained, "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Martin*, 829 F.3d at 1125 (citing *In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."); *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.")). Moreover, at the CMC, counsel for Plaintiff stated that Hengbo "intend[s] to make a decision in the very near future as to whether they would pursue arbitration," ECF No. 43 at 3, but that "[w]hen you are removing in an international arbitration case, you can remove up to the day of trial," *id.* at 7. Thus the record is clear that Hengbo wanted to delay any decision, and that it was the Court that ultimately set the deadline for Hengbo to decide whether or not to arbitrate. ECF No. 42.

In sum, the Court is not convinced by Hengbo's claim that Hengbo has not engaged in inconsistent acts. In light of Hengbo's decision to file in federal court and claim there was no valid arbitration clause, along with other failures to compel arbitration in a timely manner, the Court finds that Hengbo acted inconsistently with the right to arbitrate. Accordingly, the second element of the *Fisher* test is met.

As to the third element in the waiver inquiry, Apple argues that it would be prejudicial to Apple to grant Hengbo's Motion to Compel Arbitration because "Apple has been forced to incur substantial unnecessary defense costs" by having to litigate this case, and because such an action would "permit Hengbo to evade a ruling on Apple's earlier filed Motion to Dismiss" (i.e., it would permit Hengbo to forum shop). MTC Opp'n at 17–23. Hengbo replies that legal expenses alone are insufficient to show prejudice and that the forum-shopping cases cited by Apple are

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

distinguishable. MTC Reply 9–15.

"Although litigation conduct inconsistent with a right to arbitrate most frequently causes prejudice to the opposing party, the link is not automatic." *Martin*, 829 F.3d at 1126. However, *"[w]hen a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced." *Id.* at 1127.

Courts have varied as to what mix of factors constitutes prejudice. Admittedly, the case law is more robust when a plaintiff opposes a defendant's motion to compel arbitration, not the reverse situation present here. For instance, the Ninth Circuit has said, "[t]o prove prejudice, *plaintiffs* must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Id.* (emphasis added). "Such wounds include costs incurred in preparing the complaint, serving notice, or engaging in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction or venue." *Id.* Thus, much of the inquiry when it comes to a plaintiff claiming prejudice from a defendant's motion to compel arbitration requires the court to determine what expenses were self-inflicted by a plaintiff opting to litigate in the first place and what were a result of a defendant's own delay. *See, e.g.*, *Richards*, 744 F.3d at 1075 ("[Plaintiff] Ms. Richards was a 'part[y] to an agreement making arbitration of disputes mandatory,' and therefore '[a]ny extra expense incurred as a result of [Ms. Richards's] deliberate choice of an improper forum, in contravention of their contract, cannot be charged to' [defendant]."); *Martin*, 829 F.3d at 1127 (At the point that "the defendants' actions have shown that they, too, have sought at least for some period of time to attempt to resolve the issue in court rather than in arbitration," "the cost and expenses of litigating in district court are no longer simply 'self-inflicted' wounds on the part of the plaintiffs").

As to the opposite scenario present here where a defendant claims prejudice from a plaintiff's later filed motion to compel arbitration, the case law is less developed. This is likely because of the uniqueness of a situation where a plaintiff, who initially chose federal court,

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

changes its mind and decides to seek arbitration. While the heart of the inquiry should be the same when considering prejudice to a defendant from a plaintiff's motion to compel arbitration, the relevant facts in that inquiry are necessarily different. For one, a defendant is not the party who initiated the litigation; instead a defendant must defend itself in an ever-progressing case. Thus, none of the defense expenses can fairly be said to be "self-inflicted" wounds when the plaintiff was the one to file the lawsuit and is also the one that later decides to move to compel arbitration. *Compare Martin*, 829 F.3d at 1126–27.

As an initial matter then, all of Apple's costs incurred as a result of Hengbo's decision to litigate this case, including its rescission claim, in federal court are fairly attributable to Hengbo. The facts are clear that Hengbo filed suit claiming that the whole contract, including the arbitration clause, was invalid, and Hengbo would not make a decision to arbitrate. Plaintiff's counsel acknowledged this was because the client was still making a decision whether to pursue arbitration, but also that there was a question "as to whether [the arbitration clause] is enforceable under these circumstances." ECF No. 43 at 7. In the meantime, Apple had to move to dismiss because Hengbo had forced Apple to litigate, and its clock to respond to the Complaint was ticking. These costs were prejudicial to Apple, especially when Hengbo now turns around and dismisses half of its complaint to try to get to an arbitrator.

In response, Hengbo argues that legal expenses alone are insufficient to show prejudice and that *UCS* is instructive. *See* MTC Reply at 13–15. There, the Ninth Circuit said that defendant AT & T was not prejudiced when AT & T argued only that "it has incurred substantial costs in litigating this matter," because plaintiff's "request for damages and a jury trial never got past the pleading stage" and "the district court proceedings involved primarily a motion to dismiss on the basis of res judicata." *See* 298 F.3d at 765. However, in that case, plaintiff had already sought three prior arbitrations arising from disputes under the same agreement, had initiated the present controversy with the American Arbitration Association ("AAA") first, and only filed in state court after it did not pay the AAA filing fee. *Id.* at 759–60. Further, the *UCS* plaintiff did not bring a

16

rescission claim, but rather plaintiff's fifth cause of action explicitly requested "a declaration that Defendants, and each of them, must participate in the Arbitration pursuant to the Demand filed by the Plaintiff." *Id.* at 764. Moreover, the *UCS* plaintiff "clearly requested that the court compel the parties to arbitrate" during oral argument on the motion to dismiss and plaintiff's motion for remand. *Id.* at 764–65. Thus, *UCS*'s statements as to the prejudice experienced by defendant as a result of litigation costs are inapposite in the situation here, where Plaintiff pursued a claim that there was no valid arbitration clause in the first place.

Second, Apple's forum shopping argument is effectively that Apple would be prejudiced by Hengbo choosing to litigate a claim in federal court that the contract and arbitration clause are invalid, getting a preview of Apple's Motion to Dismiss, and then attempting to evade a potentially adverse ruling by seeking to arbitrate. *See* MTC Opp'n at 18–21. Hengbo replies that Apple is not yet prejudiced because this Court has not decided on the Motion to Dismiss or any other substantive issue. MTC Reply at 9–12.

Courts have noted that prejudice to the nonmoving party exists when the moving party seeks "an alternative forum sensing an adverse ruling in this one." *ConWest Res.*, 2007 WL 1288349, at *5; *see, e.g.*, *St. Mary's Med. Ctr. of Evansville, Ind. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir.1992) ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."); *Kramer v. Hammond*, 943 F.2d 176, 179 (2nd Cir.1991) ("Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration."); *Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union*, 671 F.2d 38, 43 (1st Cir.1982) ("[T]o require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum."); *Steiner*, 2008 WL 4822774, at *3 ("Plaintiff's belated attempt to use arbitration as a method of forum shopping is prejudicial to Defendants.").

As discussed, the Ninth Circuit in *Martin* has stated of forum shopping that "[a] party that signs a binding arbitration agreement . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both." 829 F.3d at 1128 A party may not "belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum. Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party." *Id.* Here, Plaintiff filed its Complaint in federal court asserting explicitly that the contract and arbitration clause were invalid, and as a result, forced defendants to litigate.[2] Hengbo then belatedly changed its mind and dismissed its primary claim for rescission so that it could attempt to receive the benefit of arbitration. *Martin* explicitly prohibits this. To let Hengbo get out of the forum it initially chose to pursue a forum it clearly perceives as more favorable at this point would be prejudicial to Apple. Allowing Hengbo to do so would result in a waste of resources, not just for the parties, but also the Court, that had to expend time and effort to honor Hengbo's first choice to seek litigation. Hengbo's actions are the very definition of forum shopping.

Hengbo counters that the forum shopping cases that Apple cites all involved the situation where arbitration was sought after "the court issued a ruling that foreshadowed future unfavorable rulings for the movant." MTC Reply at 10; *see, e.g.*, *Martin*, 829 F.3d as 1128 & n.4 (defendant filed after court denied its motion to dismiss); *Ford v. Yasuda*, No. 5:13-cv-01961-PSG-DTB, 2015 WL 3650216, at *7 (C.D. Cal. Apr. 29, 2015) (same). Hengbo therefore maintains that Apple cannot be prejudiced. The Court is not convinced that Hengbo's distinction is important for two reasons.

---

[2] Hengbo does not allege, for instance, that it pursued litigation only after Apple rebuffed its decision to arbitrate. *Compare Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012–13 (9th Cir. 2005) ("[Plaintiff] did not choose to litigate. She chose to arbitrate, and when she was rebuffed by [defendant], she sued as a last resort."); *Wargo v. Lavanderia*, CV 09-2717-GHK (Ex), 2009 WL 10672829, at *6 (C.D. Cal. Dec. 18, 2009) ("Defendant has always known of Plaintiffs' wish to arbitrate and Plaintiffs' insistence on arbitration has been consistent throughout the Parties' dealings. Plaintiffs' first action was to file a claim on [Defendant's] behalf with the AAA, seeking to arbitrate in Ohio. However, Defendant 'refused to waive the arbitration location of Los Angeles.' It was at this point that Plaintiffs turned to the courts to compel arbitration.").

18

First, like the case law on prejudice generally, much of the forum shopping case law focuses on the perspective of whether a *defendant's* later filed motion to compel arbitration is prejudicial to a *plaintiff*. In this context, the forum-shopping inquiry is more complex because it is not immediately obvious if the defendant has selected a forum. By contrast, in the instant case, Plaintiff Hengbo elected to file in federal court so that Hengbo could seek to rescind the contract and arbitration clause. Now that Hengbo concedes that its rescission claim lacks merit and thus withdraws the claim, Hengbo seeks arbitration. Thus, it is clear that Hengbo selected a forum, withdrew its claim, and engaged in forum shopping.

Second, to the extent that the available cases do stand for the proposition that an attempt to avoid negative rulings is evidence of forum shopping, the Court finds that this line of argument also demonstrates prejudice. As an initial matter, the Court agrees with Apple that Hengbo should not benefit from the fact that the Court was not able to issue a ruling on Apple's Motion to Dismiss in the 43 days it was pending before Hengbo decided to seek a new forum. *See* MTC Opp'n at 18–21. That in itself would be prejudicial to Apple. *See Martin*, 829 F.3d at n.4 ("More important, whatever the judge may have done, the defendants *sought* a ruling on the merits."). However, the facts are clear that Hengbo *did*, in effect, receive an unfavorable ruling. Although self-imposed, Hengbo opted to withdraw 50 percent of its Complaint after reading Apple's Motion to Dismiss. The Court therefore finds that the third element of waiver—prejudice—has been met. `

In sum, the Court finds that waiver is satisfied by the fact that Plaintiff Hengbo *itself*, knowing of its right to arbitrate, instead filed a Complaint in federal court, asserted there was no valid agreement and inherently no valid agreement to arbitrate, requested damages and a jury trial, forced Apple to litigate, waited to see Apple's Motion to Dismiss, continued to weigh the decision to arbitrate until this Court imposed a deadline, and then ultimately moved to compel over four months since it first picked this forum. Having found that Hengbo waived its right to arbitrate, the Court therefore DENIES Hengbo's Motion to Compel Arbitration.

19

Apple moves to dismiss Hengbo's claims for rescission and for breach of the implied covenant of good faith and fair dealing. MTD at 1. Hengbo concedes that it "agrees with Apple that there is sufficient consideration for the MDSA," and therefore Hengbo "withdraw[s] its claim for rescission of the MDSA for failure of consideration." MTC at 11; MTD Opp'n at 1 n.1, 7. As discussed above, the Court agrees with the parties and dismisses Hengbo's claim for rescission with prejudice. The Court therefore GRANTS the Motion to Dismiss Hengbo's claim for rescission with prejudice.[3]

Turning next to Hengbo's claim for breach of the implied covenant, Hengbo alleges that:

- Implied into the MDSA is an obligation imposed upon Apple—which had unbridled discretion in connection with the MDSA and the forecasts made pursuant thereto—to exercise Apple's discretion in good faith. Specifically, even if the MDSA did not obligate Apple to buy anything from Hengbo, the implied covenant still required Apple to provide realistic, good faith forecasts, as the MDSA obligated Hengbo to produce sufficient material to meet Apple's forecasts.

- Apple breached the covenant of good faith and fair dealing implied in the contract by forecasting 454 metric tons of high grade alumina melt stock from June 1, 2014 to November 3, 2014, when such forecasts grossly overstated Apple's needs during that time period. Apple knew or should have known long before November 3, 2014 that it did not need 454 metric tons of high grade alumina melt stock, and was obligated in good faith to adjust its forecasts and so inform Hengbo.

- As a direct and proximate result of Apple's breach of the covenant of good faith and fair dealing implied in the MDSA, Hengbo was damaged.

Compl. ¶¶ 26–28.

Importantly, Hengbo hinges its breach allegations on Apple's "forecasts." Apple argues that Hengbo's claim for breach of the implied covenant fails because "Hengbo alleges that the express terms of the Agreement provide that the volume requirement of the Agreement would be

---

[3] Apple additionally requests that the Court exercise its discretion to take judicial notice of several documents that it attaches in support of its Motion to Dismiss. *See* ECF No. 36 (citing Fed. R. Evid. 201(c)(2)). However, Apple attaches the exhibits mostly in support of its argument that the rescission claim should be dismissed. *See* MTD at 4–21. Because the Court dismisses Hengbo's rescission claim and because the exhibits would not affect the Court's decision as to the rest of the Motion to Dismiss either way, the Court declines to take judicial notice. Apple's request is denied.

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

left to the 'unbridled discretion' of Apple and its authorized partners," and "the implied covenant of good faith and fair dealing cannot operate to imply terms in the Agreement that contradict its explicit requirements." MTD at 3, 12. Additionally, Apple argues that Hengbo needed to plead an "intentional and deliberate act of bad faith and support such allegations with specific facts," and that Hengbo failed to do so. *Id.* at 4. The Court explores both of these arguments in turn.

"It has long been recognized in California that '[t]here is an implied covenant of good fair and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000) (quoting *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958)). "The scope of the duty of good faith and fair dealing depends upon the purposes of the particular contract because the covenant 'is aimed at making effective the agreement's promises.'" *Id.* (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988)).

In its first argument, Apple contends that Hengbo fails to plead a claim for breach of the implied covenant because "the implied covenant may not be read to contradict a contract's express terms," and here, Apple maintains it was given "'unbridled discretion' in providing forecasts" in the Agreement. MTD at 3, 12–13.

Apple cites two cases in support of its argument as to the applicable law on this question. First, in *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008), the California Court of Appeal said that "the implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself. . . . [I]mplied terms cannot vary the express terms of a contract." *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992)). Where an express purpose of a contract is to "grant unfettered discretion, and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and 'can never violate an implied covenant of good faith and fair dealing.'" *Id.* (citing *Carma Developers*, 2 Cal. 4th at 376).

21

The facts of *Wolf* were as follows. Plaintiffs Cry Wolf brought suit against Disney alleging, *inter alia*, breach of the implied covenant. *Id.* at 1111. The trial court had entered a directed verdict on Cry Wolf's implied covenant claim, and Cry Wolf appealed. *Id.* at 1121. On appeal, the California Court of Appeal held there was no breach of the implied covenant as a matter of law. *Id.* at 1120. The court stated that "[c]ontrary to Cry Wolf's contention, there was no disputed factual issues for the jury to decide." *Id.* at 1121. "The question was not what Disney did," but instead, "whether it was authorized by the parties' agreements to do it." *Id.* The court found that "[i]n light of Disney's unfettered discretion under the 1983 Agreement to license or not license the Roger Rabbit franchise *as it 'saw fit,'* Cry Wolf's attempt to limit that discretion by use of an implied covenant . . . [was] improper." *Id.* (emphasis added).

Apple also cites to *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798 (1995). At issue in that case was an agreement between a music company and Warner to license, lease and market a musician's recordings. *Id.* at 801. However, express in that agreement was that Warner may "refrain from any or all of the foregoing." *Id.* When Warner refused to license a recording, the music company sued Warner alleging breach of the implied covenant. The court found it would be improper to recognize an implied covenant that would contradict the express term of the agreement: "[C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power." *Id.* at 808.

Thus, in the instant case, the question is whether the parties' Agreement conferred unfettered discretion on Apple with respect to the forecasts, similar to the agreements in *Wolf* and *Third Story Music*. Section 2 of the MDSA provides as follows:

> **2. Forecast.** Apple will periodically provide written forecasts indicating Apple's projected demand for each Good (each such forecast, a "***Forecast***"). Supplier will accept each such Forecast upon receipt. Supplier will timely commence the manufacture of Goods in order to deliver the Goods by the dates indicated in each Forecast.

Compl. Exh. A ¶ 2. The plain language of this provision clearly does not confer unfettered discretion upon Apple. The provision states Apple will "provide written forecasts indicating

United States District Court
Northern District of California

Apple's *projected demand* for each Good." Compl. Exh. A ¶ 2 (emphasis added). This contrasts with the language used in the contracts in *Wolf* and *Third Story Music*. In *Wolf*, the agreement between Cry Wolf and Disney provided that "Purchaser [Disney] *shall not be under any obligation* to exercise any of the rights granted to Purchaser hereunder; and any and all said rights may be assigned by Purchaser, and/or licenses may be granted by Purchaser with respect thereto, *as Purchaser may see fit.*" 162 Cal. App. 4th at 1121 n.7 (emphasis added). In *Third Story*, the agreement referenced defendant's option to manufacture, sell, distribute, and advertise the works of Tom Waits, but provided that defendant "'*may at our election* refrain from any or all of the foregoing.'" 41 Cal. App. 4th at 801 (emphasis added). The language of ¶ 2 in the MDSA here provides no such discretion as every forecast is tied to "projected demand." Accordingly, as a matter of contract interpretation, the Court concludes that the MDSA did not confer unfettered discretion on Apple with respect to the forecasts. Because the contract did not impose objective terms or confer unfettered discretion, the covenant of good faith and fair dealing is implied. *See Kransco*, 23 Cal. 4th at 400 ("[T]here is an implied covenant of good fair and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.").

Apple replies that Hengbo is not allowed to rely on the text of the Agreement because Hengbo cannot add new allegations in its Opposition that were not in its Complaint. MTD Reply at 8–10. Apple is mistaken, however, because Hengbo did not add new allegations in its Opposition that were not in its Complaint. Hengbo properly attached the Agreement to its Complaint and made allegations related to that Agreement demonstrating that Apple did not have unfettered discretion as to the forecast provision. *See* Compl. ¶¶ 7, 26. For instance, Hengbo's Complaint clearly alleged that Apple had to provide "realistic, good faith forecasts," and that the express terms of the Agreement (that was referenced in and attached to the Complaint) stated that Apple will "periodically provide written forecasts indicating Apple's projected demand for each Good." *See id.*

23

United States District Court
Northern District of California

Additionally, despite the explicit text of the Agreement with respect to the forecast provision, Apple focuses on some sloppy language that Hengbo placed in its Complaint that Apple maintains dooms Hengbo's claim.[4] *See* MTD Reply at 8–10. In particular, Apple zeroes in on paragraph 26 of the Complaint where Hengbo stated: "[i]mplied into the MDSA is an obligation imposed upon Apple—which had unbridled discretion in connection with the MDSA and the forecasts made pursuant thereto—to exercise Apple's discretion in good faith." Although it is unfortunate that Hengbo has one broad statement in its Complaint that carelessly fails to specify which part of the Agreement gave Apple "unbridled discretion," the Court is to construe the pleadings in the light most favorable to the nonmoving party, *see Manzarek*, 519 F.3d at 1031, and here Hengbo made allegations consistent with the implied covenant. Moreover, the sentence following Hengbo's sloppy statement clarifies that Apple's unbridled discretion specifically went to the purchase provision, *not* the forecast provision. *See* Compl. ¶ 26. Indeed much of the confusion in Apple's briefing seems to go to the fact that the purchase provision undoubtedly provides for unfettered discretion; the text of the MDSA as to the purchase provision provides that "Authorized Purchasers [including Apple] *are not obligated* to purchase any Goods except pursuant to a Purchase Order it issues." Compl. Exh. A ¶ 4.5. However, while this language looks more like the language in *Wolf* or *Third Music Story*, it is not the provision upon which Hengbo bases the breach. *See* Compl. ¶¶ 26–27.

In sum, because the text of the forecast provision did not confer unfettered discretion on Apple with respect to the forecasting of demand, the covenant of good faith and fair dealing is implied. *See, e.g.*, *Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2010 WL 1460208, at *2–*5 (N.D. Cal. Apr. 8, 2010) (finding the implied covenant applicable when the contract provision at issue gave no unfettered discretion because it contained "no specific or objective standards regarding the construction of the clubhouse"). Under the implied covenant, Apple could

---

[4] The Court also notes Hengbo's statement in paragraph 10 of the Complaint that "the MDSA did not obligate Apple to do anything."

24

only make its forecasts on reasonable and good faith grounds. The Court finds that Apple's first argument fails.

Apple argues second that Hengbo's implied covenant claim fails because it does not plead bad faith or any facts supporting an allegation of bad faith. MTD at 14–17. In Opposition, Hengbo argues that "bad faith" is not an element of a claim for breach of the implied covenant. MTD Opp'n at 11–13. For the reasons discussed below, the Court agrees with Hengbo.

The Supreme Court of California has said of the implied covenant that "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *See Carma Developers*, 2 Cal. 4th at 372. The Supreme Court of California explained: "it has been suggested the covenant has both a subjective and objective aspect" and that "[a] party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." *Id.* Further, it is not "necessary that the party's conduct be dishonest. Dishonesty presupposes subjective immorality; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive." *Id.*at 373.

While Apple argues that Hengbo had to allege bad faith, it fails to cite to a California case that has stated that bad faith is required under state law to state a claim of breach of the implied covenant. Instead, Apple cites to a California Court of Appeal case, *Careau & Co. v. Security Pacific Business Credit, Inc.*, that stated that:

> [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence *but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement*. Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.

222 Cal. App. 3d 1371, 1395 (1990) (emphasis added). In any event, such language by the California Court of Appeal is not required by the California Supreme Court's later decision in

25

United States District Court
Northern District of California

*Carma Developers* that emphasized that "the covenant of good faith can be breached for *objectively unreasonable conduct*, *regardless of the actor's motive*." 2 Cal. 4th at 373 (emphasis added). Apple does nothing to explain this difference. Bad faith in the manner Apple argues is therefore not required, and as the California Supreme Court has said, the implied covenant can be breached by objectively unreasonable conduct. Thus, Hengbo has successfully pled a claim for breach of the implied covenant if it has alleged objectively unreasonable conduct on the part of Apple.

The parties' dispute ends there because Apple does not argue that Hengbo failed to allege that Apple acted in an objectively unreasonable way. Specifically, Hengbo has alleged that Apple forecasted hundreds of metric tons of high grade alumina stock each month (from June to November of 2014) that lead to the production of over 2,000 metric tons of alumina stock when Apple did not need that stock as evidenced by the fact that this pattern went on for over four months and Apple did not purchase, leading to damages to Hengbo. *See* Compl. ¶¶ 13–18, 23–28. This statement sufficiently alleges that Apple acted in an objectively unreasonable manner.

In sum, Apple's arguments against Hengbo's breach of the implied covenant claim fail. The Court therefore DENIES Apple's Motion to Dismiss Hengbo's implied covenant claim.

## IV. CONCLUSION

For the foregoing reasons the Court DENIES Hengbo's Motion to Compel. The Court GRANTS IN PART and DENIES IN PART Apple's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: September 26, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-00468-LHK
ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS